Good morning, Your Honors. May it please the Court, I'm Richard Jones. My office in association with Goulden Associates and Mark Thierman of Reno, Nevada, represent the appellant Nicholas Tchikovani. This case and your eventual appeal stretches far greater than three firms that were disappointed over not getting attorney's fees at a final fairness hearing. It sends a far greater message to pending class actions and future class action cases where there's lead counsel appointed and non-lead as to the role the non-lead attorneys should or could do with respect to providing substantial benefits to the class. Non-lead counsel in cases that are currently pending might decide not to do work in connection with that case in the event that they might not be paid, even though they have a reliance that they're going to be paid for their benefits. This was kind of an extreme situation here. I thought it was very extreme to have a zero, the court... And he's got one client. He files a class action, and then he wants a bunch of money. Well, let me discuss some of... Isn't that what happened here? I disagree, Your Honor. Well, that's what it reads to me. Okay. Let me just discuss the substantial benefits the three law firms of the Tchikovani team did to preserve this class action. First and foremost, in June of 2007, prior to any settlement, the Gould & Associates and my firm, through Mr. Tchikovani, received notice of another class action in San Francisco. We intervened in that case. We made a first appearance in that case. We objected to that potential settlement because that class action against the same defendant contained a Civil Code Section 1542 waiver. Had that waiver been on all of the releases, that could have potentially served to destroy the current throne Tchikovani case. A lot of time, a lot of effort was spent going to Northern California on that case to save the potential throne case from the disaster. The 1542 language was stricken from the potential judgment. The court then ruled that the objection was overruled. It should have been just moot, but at that point, the language of the 1542 waiver was removed from that Chan Lanier settlement. Having done defense work for 20 years, I know that had that 1542 language been in the Chan Lanier settlement and members of the throne Tchikovani class action accepted payment under the Chan Lanier settlement and executed that release with the 1542 waiver, those class members in the throne Tchikovani case would have been subject to potentially no recovery in this case. So with respect to the efforts by... Why would they have signed up on that? Pardon me? Why would they have signed up on that? Well, these are laypersons. They're financial consultants working for the bank, and had they received notice that they were going to receive some holiday pay or some vacation pay that they earned, they would have accepted that. And then there would have been this civil code section 1542 reads that you signed this and you waive all known and unknown claims. Now the defense has the ammunition in the throne Tchikovani case to now say to all of those class members that took money and signed that release that they're not available to now collect under the throne settlement. And I think that was substantial. Do you think the judge would have approved that? I certainly do. In fact, there was already a preliminary approval of the proposed settlement. Oh, no. Who was the judge? I don't know the name of the judge, Your Honor. We did cite the case in our documents. San Francisco. Yes, Your Honor. Yeah, well, they're careful up there. I think additionally the Tchikovani team of lawyers provided a substantial benefit to the class with the experience of the attorneys. Mark Thurman, his declaration that he provided in connection with the motion for fees reads like a Grisham novel, but it's nonfiction. A half a billion dollars in settlements on these particular types of cases across the country. My office fielding calls from class members wanting to know what the deal is with the settlement. Particularly in one case, one class member reached out to my office and said he hadn't received the forms. I walked him through the process. I got him in touch with the class administrator. I followed up. I wrote letters to the initiative legal group. I wrote letters to the administrator. And I followed up to make sure that that gentleman received his settlement funds under this class action. Mr. Jones, I'm sure you presented all of this to the district court, didn't you, in your application for fees? We did. And it was puzzling that, for example, on that whole issue with respect to the Northern California case, that the court even cited, in her opinion, the exact language that the Gould & Associates firm was able to carve out of that judgment and out of that settlement. She quoted that language as the reason that that work wasn't necessary, but that was the exact work that the Gould & Associates firm performed in connection with saving the 1542 potential disaster for this class. Now, will you review what she did for what, abuse of discretion? That would be clearly the standard for review would be abuse of discretion. And how did she abuse her discretion? I think she ignored completely the work that the Gould & Associates firm did in connection with Chan Lanier. I think she ignored the fact that at the request of the initiative legal group, they specifically asked my law firm and Gould & Associates to review settlement documents and provide them with important insights as to it. I wrote letters to their firm saying, I reviewed these documents. You need to consider the Paga claim. You need to have four or five other issues in the settlement. That firm agreed, thanked us, said our input was helpful, and put those changes and corrections into the final settlement document. So she seemed to be … She got no pay for that at all? None whatsoever. Or the costs that we incurred on the case, the costs in the Chan Lanier, the costs in that case on representing Mr. Chikovani. It was very puzzling that all of the work that we did in connection with the case was a wash, a zero. How about the San Francisco case? Did you get any money out of that? We didn't ask for any, Your Honor. Why not? Because we were protecting the thrown Chikovani class. We did not have a presence in that case. We were only going into that case to object to that settlement insofar as it asked for a 1542 waiver that could potentially damage the thrown Chikovani class action case. Counsel, there's another problem here I'd like to hear you address, and that's this disagreement that was reached at the time of the settlement in which Mr. Chikovani allegedly waived his right to appeal the denial of your motion for attorney's fees because he agreed to the settlement agreement. The settlement agreement included an express waiver of the right to appeal unless the award of attorney's fees provided for in the settlement was reduced, and it wasn't. So did Mr. Chikovani waive the right to seek attorney's fees? But the lawyers did not sign that document, and the lawyers objected. Didn't you advise him about it, or weren't you involved in it? Well, unfortunately, that clause was put in by the initiative legal group, and it would not be removed by them. They insisted that it was in there, and as the attorneys for Mr. Chikovani, we refused to sign that document, and it does not expressly indicate that the lawyers are waiving their rights to appeal their motion for attorney's fees, which we brought in connection with the final fairness hearing. Nothing expressly was stated in there indicating that non-league counsel could bring an appeal in the event that they filed a motion for attorney's fees and it was denied. And I would also argue that the fees were arguably reduced in light of the fact that the court felt that it was a zero versus some number for the work. I specifically asked at the preliminary hearing, I asked the court whether the court would like a lodestar, like to hear from us with respect to the time, the effort that we spent on this case, and the court said, no, you don't need to do a lodestar. Can a lawyer just say, I want to be paid some fees even though they don't have a client who's got a stake in it? I don't follow that. Well, I think we, the punitive class was involved as well. He was your client, and he was the class representative of the class you were representing, and you let him sign this waiver. Well, we let him sign a document that entitled him to an equal class representative enhancement, equal to Mr. Throne, who was also acknowledged by the initiative legal group that Mr. Ciccovanni was an excellent class representative. And we were in a pickle when they produced a document that says that we can't object to the attorney's fees, and then in their motion for their final fairness motion, they never even mentioned our three firms. They never even brought up the fact that we did work to the substantial benefit of the class. They never addressed it yet in their motion for preliminary approval. They did indicate that they were going to move for fees for all of the attorneys. Thank you. Well, you know, it's just my reviewing this file. That's the impression that I got, that you had one lawyer that was working hard, and got what looked like a good settlement, and the deal was practically closed. And then Ciccovanni comes along and they file another. How many class actions were filed here, all told? Well, there were three class representatives before Throne was put in place at Petboni. There was three separate lawsuits. Actually, only two, Your Honor. Only two? Yes. All right, so that whole thing just seems a little messy. It was messy, and I was honestly very surprised that there was no request for a load start from our three firms or no request to reimburse us for the time that we did provide a substantial benefit to the class. Yeah, it's all right. We'll hear from you. Thank you. Good morning, Your Honor. May it please the Court. Mark Premo for appellee, Chad Throne. I wanted to respond to some of the points made by counsel for Mr. Ciccovanni. First, in regards to the objection that their firm lodged in the case in Northern California in San Francisco, that case only had to do with vacation, paid vacation time. It had nothing to do with the claims that we raised in the case that was settled, and they're appealing the attorney's fees with regard to. That case, since it only had to do with vacation pay and all of the releases related to vacation pay, had no bearing on our case and posed no threat to our settlement. The district court evaluated their objection, evaluated the language of the release, and the fact that the San Francisco judge overruled the objection, carefully considered it in her decision. Who was the San Francisco judge? I can't remember the name of the judge. Well, you know, district judges feel that they handle these big cases and that gains them a foothold to immortality, and you don't even remember their name, huh? I'm sorry, Your Honor, I don't. But in any event, the fact is that that case had no bearing on this case, which had to do with overtime and unreimbursed business expenses. Responding to other points made by counsel for Ciccovanni. Did this unnamed district judge, did she address the nature of the work that was done in the San Francisco case in deciding not to award fees? Well, first of all, I think the San Francisco case was a superior court judge, if I recall. Oh, our judge, Your Honor? Our judge. Judge Collins. Yes, Judge Collins specifically in her decision evaluated Mr. Ciccovanni's counsel that the objection to the San Francisco case had some effect on our settlement and concluded that it had no effect. And as Mr. Jones said, quoted the language of the release in the San Francisco case. And so to meet the abuse of discretion standard, well, I don't think the abuse of discretion standard can be met, given that she specifically evaluated that argument by Ciccovanni counsel. In regards to fielding calls, Ciccovanni's counsel just mentioned that they were fielding calls, but the reality is that there's only one claim that they even claimed, they even alleged that they helped with, and that was in direct contravention of our express instructions to them to direct all calls to our firm. So in actuality, the one example that they give is actually in direct contravention of our instructions to them as the counsel. Well, now you sent the settlement agreement to the other law firm for review, did you? Yes, Your Honor. Since their client, Mr. Ciccovanni, you know, had to execute the agreement, we of course sent it to them for their review so their client had counsel to review it on his behalf. So you're not asking for them to contribute language to the overall settlement agreement as such, but to consider the agreement insofar as it impacted their client to make sure it was okay with him. That's precisely right. Is that right? That's precisely right, Your Honor. Did you do that with other law firms or other members of the class as well? Well, this was the only other person who, Mr. Ciccovanni was the only other person who would need to review the settlement agreement because he was being named as a class representative and receiving a class enhancement in exchange for a full release of his claims. Okay. It should be noted that in the original case that Ciccovanni filed, it was a wrongful termination claim. There were no class allegations. So Mr. Ciccovanni was releasing that wrongful termination claim as well as all his wage claims and any other claims as a general release. So of course that needed to be reviewed by his counsel and that's why we gave them the settlement agreement. So in direct contrast to what Counsel for Ciccovanni said moments ago that his arguments were ignored by Judge Collins, the trial court judge, it's quite the opposite. If you read the decision, it goes over all these arguments. All these arguments were made at the trial court level. They were all considered and they were all rejected. Unless there are any other questions, I don't have any more argument. Thank you. Thank you. Very brief. I disagree with the position that Judge Collins made with respect to that effect of the 1542 waiver. She read into her decision the exact language that the firm, Gould & Associates, carved out of that settlement. In other words, preserving the rights of the thrown Ciccovanni class members, avoiding the potential disaster of the 1542. The fact that that objection was overruled was because the language was removed from the settlement in that Northern California case. That's one point. And the last point is that settlement document was provided to both my firm and Gould & Associates for our analysis, our review, our legal research, and our additions. We did not simply just say, oh, Mr. Ciccovanni, this is fine. We provided letters back, and they're part of the record, letters back to the initiative legal group telling them that they needed to be aware of six different areas that were missing or needed to be removed. They thanked us for our input from the two firms. They made four of the six changes that we requested. It wasn't clearly as counsel for Mr. Ciccovanni reviewed this document and approved it in form and substance. We were asked to provide input to help that class action settlement. Thank you.
judges: Graham, Pregerson, Thompson